IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES PLAYING CARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 25-cv-08233 |

## COMPLAINT

Plaintiff The United States Playing Card Company, a Delaware corporation ("USPC" or "Plaintiff"), hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, the "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales

---
[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by USPC to combat e-commerce store operators who trade upon USPC's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of USPC's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. USPC is forced to file this action to combat Defendants' infringement and counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. USPC has been and continues to be irreparably damaged through consumer confusion, as well as dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Founded in 1867, The United States Playing Card Company is an iconic manufacturer of playing cards and related games. USPC's headquarters are located at 300 Gap Way, Erlanger, Kentucky 41018.

5. USPC has a storied and illustrative history. In World War II, USPC partnered with the United States government to produce cards that transmitted military intelligence and instructed American soldiers.

6. USPC is the largest manufacturer of playing cards in the world, having produced and sold over four billion decks of cards since its inception.

7. USPC sells many high-quality products, including, but not limited to, playing cards and related games, to carefully curate customer experiences and further enhance the appeal of the USPC brand (these and other USPC branded products are collectively referred to herein as the "USPC Products").

8. USPC consistently generates annual revenue in excess of one hundred million dollars. The root of this financial success lies in USPC's rigorous manufacturing and quality control processes, global consumer base, and its ability to consistently deliver the highest quality products.

9. USPC Products have become enormously popular and even iconic, driven by USPC's arduous quality standards and innovative design. Among the purchasing public, genuine USPC Products are instantly recognizable as such. In the United States and around the world, the USPC brand has come to symbolize high quality. USPC Products including, but not limited

to, Bicycle®, Bee®, Hoyle®, Maverick®, Aviator® and Tally-Ho® playing cards, are among the most recognizable playing cards in the world.

10. USPC's trademarks are critical to its business. USPC is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. USPC Products always include at least one of USPC's trademarks. USPC uses its trademarks in connection with the marketing of its USPC Products. USPC has registered many of its trademarks with the United States Patent and Trademark Office, including, but not limited to, the following trademarks (collectively, the "USPC Trademarks").

| Registration No. | Trademark |
|---|---|
| 48,891<br>2,399,763 | BICYCLE |
| 62,565 | AIR-CUSHION FINISH |
| 256,622 | AVIATOR |
| 49,107 | "BEE" |
| 4,585,005 | BEE-TEK |
| 138,079 | CAMBRIC |
| 260,837 | CEL-U-TONE |
| 3,413,184 | CUPID BACK |
| 899,141 | DIAMOND |
| 1,182,097 | E-Z-SEE |
| 4,670,297 | FOURNIER |
| 1,342,484<br>1,686,549<br>1,325,654<br>1,126,822 | HOYLE |
| 4,251,560 | MAIDEN BACK |
| 4,058,738 | MANDOLIN BACK |
| 5,586,544 | METALLUXE |
| 735,607 | NO. 77 |
| 366,741 | PO-KE-NO |
| 48,874 | RAMBLER |
| 829,727 | RIDER |
| 555,116 | 48 |
| 151,272 | 808 |
| 94,671 | *Aristocrat* |

| Registration No. | Trademark |
|---|---|
| 4,397,415 | "Bee" |
| 6,853,223 | BICYCLE |
| 275,340 | CLUB SPECIAL |
| 49,420 | CONGRESS |
| 505,214 | KEM |
| 1,070,609 | LōVISION |
| 786,728 | MAVERICK |
| 133,071 | The National Card Co. |
| 5,786,468 | US |
| 4,716,966 | US |
| 2,049,103 | (spade design) |
| 1,301,613 | (A with suits design) |
| 3,123,721 | (ornate spade design) |

| Registration No. | Trademark |
|---|---|
| 3,427,752 | |
| 735,606 | |
| 60,313 | |
| 555,115 | |
| 55,524 | |
| 55,100 | |
| 3,532,410 | |
| 2,862,722 | |
| 51,202 | |
| 4,716,967 | |

6

| Registration No. | Trademark |
|---|---|
| 695,587 | |
| 1,771,384 | |
| 2,694,791 | |
| 1,634,808 | |
| 5,775,642 | |
| 6,777,691 | |
| 1,686,416 | |

| Registration No. | Trademark |
|---|---|
| 920,593 | |
| 1,437,282 | |
| 153,634 | |
| 4,069,060 | |
| 153,633 | |
| 143,499 | |
| 155,547 | |

8

| Registration No. | Trademark |
|---|---|
| 23,782 | |
| 4,351,088 | |
| 4,160,512 | |
| 1,644,376 | |
| 204,255 | |
| 1,645,186 | |
| 1,709,997 | |
| 3,216,354 | |

| Registration No. | Trademark |
|---|---|
| 52,014 | |
| 3,149,457 | |
| 2,655,480 | |
| 2,050,539 | |
| 2,665,170 | |
| 2,655,511 | |
| 7,735,703 | |

11. The above U.S. registrations for the USPC Trademarks are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the USPC Trademarks constitute *prima facie* evidence of their validity and of USPC's exclusive right to use the USPC Trademarks pursuant to 15 U.S.C. § 1057(b). The USPC Trademarks have been used exclusively and continuously by USPC for many years and

10

have never been abandoned. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the USPC Trademarks included in the above table.

12. The USPC Trademarks are exclusive to USPC and are displayed extensively on USPC Products and in USPC's marketing and promotional materials. USPC expends millions of dollars annually promoting and marketing the USPC Trademarks. USPC Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. Because of these and other factors, the USPC name and the USPC Trademarks have become famous throughout the United States.

13. The USPC Trademarks are distinctive when applied to the USPC Products, signifying to the purchaser that the products come from USPC and are consistent with USPC's rigorous quality standards. USPC ensures that all products bearing the USPC Trademarks are manufactured to the highest quality standards. The USPC Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the USPC Trademarks is of incalculable and inestimable value to USPC.

14. USPC Products are sold online via the bicyclecards.com website and through other authorized channels. Sales of USPC Products via the bicyclecards.com website are significant. The bicyclecards.com website features proprietary content, images and designs exclusive to the USPC brand.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to USPC. On information and belief,

Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for USPC to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, USPC will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the USPC brand has resulted in significant counterfeiting of the USPC Trademarks. Consequently, USPC has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, USPC has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, and Temu including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[6]

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores

---

[3] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[4] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.
[5] *Id.* at p. 39.
[6] Chow, *supra* note 4, at 186-87.

13

operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. USPC has not licensed or authorized Defendants to use any of the USPC Trademarks, and none of the Defendants are authorized retailers of genuine USPC Products.

21. Many Defendants also deceive unknowing consumers by using the USPC Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for USPC Products. Other e-commerce stores operating under the Seller Aliases omit using the USPC Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for USPC Products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of USPC's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to USPC. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from USPC, have knowingly and willfully used and continue to use the USPC Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the USPC Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming USPC.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. USPC hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered USPC Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The USPC Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from USPC Products offered, sold or marketed under the USPC Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the USPC Trademarks without USPC's permission.

32. USPC is the exclusive owner of the USPC Trademarks. USPC's United States Registrations for the USPC Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of USPC's rights in the USPC Trademarks and are willfully infringing and intentionally using counterfeits of the USPC Trademarks. Defendants' willful, intentional, and unauthorized use of the USPC Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. USPC has no adequate remedy at law and, if Defendants' actions are not enjoined, USPC will continue to suffer irreparable harm to its reputation and the goodwill of its iconic USPC Trademarks.

35. The injuries and damages sustained by USPC have been directly and proximately caused by (a) Defendants' wrongful reproduction and use of USPC Trademarks, and (b) Defendants' advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. USPC hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with USPC or the origin, sponsorship, or approval of Defendants' Counterfeit Products by USPC.

38. By using the USPC Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. USPC has no adequate remedy at law and, if Defendants' actions are not enjoined, USPC will continue to suffer irreparable harm to its reputation and the goodwill of its USPC trademarks and brand.

**PRAYER FOR RELIEF**

WHEREFORE, USPC prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the USPC Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine USPC Product or is not authorized by USPC to be sold in connection with the USPC Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine USPC Product or any other product produced by USPC that is not USPC's or not

      produced under the authorization, control, or supervision of USPC and approved by USPC for sale under the USPC Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of USPC, or are sponsored by, approved by, or otherwise connected with USPC;

    d. further infringing the USPC Trademarks and damaging USPC's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for USPC, nor authorized by USPC to be sold or offered for sale, and which bear any of USPC's trademarks, including the USPC Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon USPC's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the USPC Trademarks;

3) That Defendants account for and pay to USPC all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the USPC Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117; or

in the alternative, that USPC be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the USPC Trademarks;

4) That USPC be awarded its reasonable attorneys' fees and costs; and

5) That USPC be awarded any and all other relief that this Court deems just and proper.

Dated this 18th day of July 2025.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 /312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiff*
*The United States Playing Card Company*